UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FORREST KENDRID,<br><br>          Plaintiff,<br><br>     v.<br><br>I. UMANA, et al.,<br><br>          Defendants. | No. 2:24-cv-01005-EFB (PC)<br><br><br>ORDER |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. In addition to filing a complaint (ECF No. 1), he also filed an application to proceed in forma pauperis (ECF No. 2). The court will grant his application and screen the complaint.

### Application to Proceed in Forma Pauperis

Plaintiff's application makes the showing required by 28 U.S.C. § 1915(a)(1) and (2), that plaintiff is unable to prepay fees and costs or give security therefor. Accordingly, plaintiff's motion for leave to proceed in forma pauperis is granted.

### Screening Standards

Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must identify cognizable claims or dismiss the complaint, or any portion of

1

1  the complaint, if the complaint "is frivolous, malicious, or fails to state a claim upon which relief
2  may be granted," or "seeks monetary relief from a defendant who is immune from such relief."
3  *Id*. § 1915A(b).
4      A pro se plaintiff, like other litigants, must satisfy the pleading requirements of Rule 8(a)
5  of the Federal Rules of Civil Procedure.  Rule 8(a)(2) "requires a complaint to include a short and
6  plain statement of the claim showing that the pleader is entitled to relief, in order to give the
7  defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v.*
8  *Twombly*, 550 U.S. 544, 554, 562-563 (2007) (citing *Conley v Gibson*, 355 U.S. 41 (1957)).
9  While the complaint must comply with the "short and plain statement" requirements of Rule 8, its
10 allegations must also include the specificity required by *Twombly* and *Ashcroft v. Iqbal*, 556 U.S.
11 662, 679 (2009).
12     To avoid dismissal for failure to state a claim a complaint must contain more than "naked
13 assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of
14 action." *Twombly*, 550 U.S. at 555-557.  In other words, "[t]hreadbare recitals of the elements of
15 a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at
16 678.
17     Furthermore, a claim upon which the court can grant relief must have facial plausibility.
18 *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual
19 content that allows the court to draw the reasonable inference that the defendant is liable for the
20 misconduct alleged." *Iqbal*, 556 U.S. at 678.  When considering whether a complaint states a
21 claim upon which relief can be granted, the court must accept the allegations as true, *Erickson v.*
22 *Pardus*, 551 U.S. 89 (2007), and construe the complaint in the light most favorable to the
23 plaintiff, *see Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).
24 Screening Order
25     Plaintiff sues defendants identified as I. Umana and Biclar.  Both defendants are alleged to
26 be supervising Registered Nurses (RNs) at the California Medical Facility.  Plaintiff alleges that
27 defendants acted with deliberate indifference to his serious medical or mental health care needs
28 on March 27, 2024.  Plaintiff alleges an unspecified "conflict" between himself and a staff person

identified as "CNA Bravo." Bravo appears to have been assigned to maintain a suicide watch over plaintiff. Plaintiff objected to having Bravo as his "suicide observatory." ECF No. 1 at 3. Plaintiff informed Umana that Bravo triggered plaintiff's PTSD because of a previous, unspecified "altercation" with Bravo. Plaintiff told Umana that plaintiff would try to kill himself if Bravo remained at her suicide watch post. Umana allegedly stated that "he did not care if plaintiff tried to kill himself he would be dealt with, then smiled and walked away." *Id*. Plaintiff cut his wrist, Bravo activated an alarm, and officers arrived to escort plaintiff to the exam room where two unidentified nurses cleaned and dressed plaintiff's cut. *Id*. Umana instructed Bravo to remain at her post, and Biclar refused to intervene with Umana who was her "supervisory counterpart." *Id*. at 3-4. Plaintiff alleges Biclar acted with "total disregard" for plaintiff's safety by refusing to intervene with Umana. *Id*. at 4. Plaintiff was returned to his cell, and Bravo remained at the suicide watch post. *Id*.

Plaintiff cut his wrist a second time, in the presence of both Umana and Biclar. Two unidentified nurses cleaned and dressed the second cut. Plaintiff was once again returned to his cell. Plaintiff alleges Umana, in the presence of Biclar, instructed Bravo "to not activate her alarm unless it's longer and deeper." *Id*. Bravo responded to Umana that Bravo did not want to risk losing her job by violating the policy requiring alarm activation whenever an inmate harms himself. *Id*. at 4, 7. Bravo informed plaintiff that Bravo had received instructions from Umana and Biclar to not activate the alarm "unless the cut were longer and thicker." *Id*. at 5. Plaintiff claims to have overheard Umana instruct nursing staff that "the next time he cuts himself don't bring him to the exam room" but instead "clean him in the hallway in front of his door so everyone can see and Bravo will continue to be his suicide observatory I don't care what happens to [plaintiff's] well being." *Id*. at 5.

Plaintiff cut himself a third time "deeper and thicker." *Id*. Bravo activated the alarm and reported the third cut was bigger and thicker. Two unidentified nurses instructed the responding officers to hold plaintiff in front of his cell door and they treated plaintiff there. *Id*.

////

The complaint alleges that Umana and Biclar[1] acted with deliberate indifference to plaintiff's serious mental health needs, in violation of the Eighth and Fourteenth Amendments.[2] *Id*. Plaintiff claims defendants could have assigned other mental health staff to replace Bravo at the suicide watch post so as to de-escalate plaintiff's "mental state of mind" and that defendants' failure to do so "disregarded plaintiff's safety and caused pain and suffering." *Id*. at 7.

Eighth Amendment Claims

Plaintiff's allegations imply Eighth Amendment claims based on either or both failure to protect and/or deliberate indifference to serious medical or mental health care needs. The potential claims are somewhat intertwined.

<u>Failure To Protect</u>

Regarding failure to protect, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," which prohibits "cruel and unusual punishment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). A violation of the Eighth Amendment requires a showing of both an "objective component" – the objective seriousness of the challenged condition, and a "subjective component" – the responsible official's subjective state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832. Where a prisoner alleges injuries stemming from an objectively unsafe condition of confinement, prison officials may be held

---

[1] It is somewhat unclear the extent to which the claims against Biclar are based on Biclar's own supervisory status and authority, or merely on a presumed ability to confer or intervene with Umana. For purposes of this screening, the complaint is construed as alleging that Biclar's authority was essentially equal to Umana's, since they are both alleged to be supervisory registered nurses.

[2] Plaintiff's claims arise, if at all, under the Eighth Amendment rather than the Fourteenth Amendment because he is a convicted inmate in state custody. *Redman v. City of San Diego*, 942 F.2d 1435, 1440 n.7 (9th Cir. 1991), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994) ("while the Eighth Aamendment proscribes cruel and unusual punishment for convicted inmates, the due process clause of the Fourteenth Amendment proscribes any punishment of pretrial detainees"); *see also Perez v. Cox*, 788 F. App'x 438, 442 (9th Cir. 2019) (recognizing abrogation on other grounds).

liable only if they acted with "deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124 (9th Cir. 1998) (citing *Farmer*, 511 U.S. at 835). A condition is sufficiently serious if it poses "a substantial risk of serious harm" to the inmate. *Farmer*, 511 U.S. at 832. Because the sufficiency of a conditions-of-confinement claim depends upon the particular facts of each situation, the "circumstances, nature, and duration" of the challenged conditions must be carefully considered. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, … and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. Thus, a showing of deliberate indifference rests on facts clearly evincing "obduracy and wantonness, not inadvertence or error in good faith." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013) (quoting *Farmer*, 511 U.S. at 847). The Eighth Amendment does not give rise to a federal cause of action whenever prisoners are inconvenienced or suffer de minimis injuries. *Hernandez v. Denton*, 861 F.2d 1421, 1424 (9th Cir. 1988), *vacated on other grounds sub nom. Denton v. Hernandez*, 112 S. Ct. 1728 (1992).

     To the extent the complaint's allegations against Umana and Biclar might be construed as a failure to protect claim based on keeping Bravo at the suicide watch post, the claim fails for multiple reasons. The complaint alleges a previous "altercation" between plaintiff and Bravo without describing the nature of the altercation or why it might trigger plaintiff's PTSD. Nothing in the complaint suggests that Bravo was unwilling or unable to competently perform her role as "suicide observatory." Bravo called for medical attention each time plaintiff cut himself. Bravo articulated her intention to follow policy, and asked for and obtained clarification from Umana and Biclar when they instructed Bravo on the threshold injury for activating the alarm. Bravo also communicated with plaintiff and explained to him the threshold for activating the alarm. The complaint shows no objective reason why Bravo posed a substantial risk of serious harm to

plaintiff and no objective reason for defendants to remove Bravo from her post.  For these reasons, the complaint fails to state an Eighth Amendment failure to protect claim based on the decision to keep Bravo at the suicide watch post.

Deliberate Indifference To Serious Medical Or Mental Health Needs

To succeed on an Eighth Amendment claim predicated on deliberate indifference to medical or mental health care need, a plaintiff must establish that: (1) she had a serious medical need; and (2) the defendant's response to that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A serious medical or mental health care need exists if the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096. Deliberate indifference may be shown by the denial, delay, or intentional indifference with treatment, or by the way in which care is provided. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer*, 511 U.S. at 837.  Thus, a defendant will be liable for violating the Eighth Amendment if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.  A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to competently treat a serious medical or mental health condition even if some treatment is prescribed, may constitute deliberate indifference in a particular case. *Id.*

However, "mere 'indifference,' 'negligence,' or 'medical malpractice,'" will not support an Eighth Amendment claim. *Broughton v. Cutter Laboratories*, 622 F.2d 4548, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06); *see also Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).  "Rather, to prevail on a claim involving choices of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" *Id.* (quoting

*Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).  Further, a plaintiff must have suffered some type of pain or harm that is more than de minimis in order to implicate the Eighth Amendment.  *See, e.g.*, *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) ("delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference … unless the denial was harmful").

The complaint fails to adequately allege an objectively serious medical or mental health care need to replace Bravo at her post.  There is no allegation that any medical or mental health care professional had issued any directive prohibiting Bravo from serving in the suicide watch post so as to avoid triggering plaintiff's PTSD.  It was plaintiff's own assessment that Bravo should have been replaced.  Defendants are supervisory registered nurses who assessed the situation differently and made an affirmative decision to keep Bravo at her post.  The complaint fails to allege that plaintiff's demand to replace Bravo was anything more than a disagreement over the care needed to address plaintiff's PTSD mental health condition.  *See Gonzalez v. Zika*, No. C 11-5561 CS (PR), 2013 WL 4557770, at *11 (N.D. Cal. Aug. 27, 2013) (although plaintiff disagreed, mental health care professionals' decision to discontinue single cell housing as treatment for panic disorder was based on "considered evaluation of [the inmate's] symptoms and responses to treatment" and was neither medically unacceptable nor taken with sufficiently culpable deliberate indifference); *cf. Brown v. Newsome*, 2:19-cv-1227-DB P, 2019 WL 3060063, at *2 (E.D. Cal. July 12, 2019) (a prisoner's hunger strike is not grounds for finding him in imminent danger because "[w]ith rare exception, a plaintiff cannot 'create the imminent danger so as to escape the three strikes provision of the PLRA'" (citation omitted)).  The complaint also fails to show that defendants were subjectively deliberately indifferent to plaintiff's PTSD condition.  Umana's comment that plaintiff would "just have to deal with" having Bravo in the suicide watch post is insufficient to show deliberate indifference, especially in light of defendants' in-person monitoring and supervision and the attention given to plaintiff's needs in the ensuing hours.

The complaint equally fails to adequately allege a serious medical or mental health care need regarding the apparently minor cuts plaintiff inflicted on himself.  *See Gonzalez v. Guzman*,

No. 17-cv-241-GPC-BGS, 2017 WL 5446087, at *4 (S.D. Cal. Nov. 14, 2017) ("Because Plaintiff's injuries appear to consist of cuts/lacerations approximately ½ cm in length, they do not rise to the level of a 'serious medical need.'" (collecting cases)). Even if the cuts were a serious medical need, the complaint fails to how defendants were deliberately indifferent to the need. The complaint does not allege that defendants ignored or disregarded plaintiff's cuts, nor does the complaint allege inadequate treatment for the cuts. Two unidentified nurses (not defendants) treated each of the cuts, and defendants also arrived on-scene. Plaintiff was immediately returned to his cell after the first two cuts were dressed at the nursing station, which is another indication that the cuts were minor. Defendants' decision to have plaintiff's third cut treated at his cell door is another treatment decision with which plaintiff disagrees, but the complaint fails to show that treating plaintiff's third cut at the cell door posed a substantial risk of serious harm to him or was otherwise deliberately indifferent to a serious medical or mental health care need.

Umana's instruction to "clean" plaintiff in the hallway in front of his door the next time he cuts himself "so everyone can see and Bravo will continue to be his suicide observatory I don't care what happens to [plaintiff's] well being" is insufficient to show deliberate indifference to a serious medical or mental health care need. This allegation instead shows that Umana gave instructions how to provide care if plaintiff cut himself again. Nor does the complaint show any substantial risk or any actual harm done by treating plaintiff's cut at the cell door instead of in the exam room. The complaint does not show, for example, why "everyone seeing" a cut being treated at the cell door is materially more adverse to plaintiff's well-being, than "everyone seeing" plaintiff being escorted to the exam room to be treated there. For all these reasons, the complaint fails to allege sufficient facts showing an objectively unsafe condition posing a substantial risk of serious harm to plaintiff, or that defendants had subjective knowledge of such a substantial risk and obdurately and wantonly disregarded it, and thus the complaint fails to state an Eighth Amendment claim against defendants for deliberate indifference to serious medical or mental health care needs.

<u>Leave to Amend</u>

Plaintiff's complaint is dismissed with leave to amend. If Plaintiff chooses to file an

amended complaint, he should note that any amended complaint must identify as a defendant only persons who personally participated in a substantial way in depriving him of a federal constitutional right. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act or omits to perform an act he is legally required to do that causes the alleged deprivation). The amended complaint must contain a caption including the names of all defendants. Fed. R. Civ. P. 10(a). The amended complaint should also describe, in sufficient detail, how each defendant personally violated or participated in the violation of his rights. The court will not infer the identify of defendants, nor the existence of allegations that have not been explicitly set forth in the amended complaint.

Plaintiff may not change the nature of this suit by alleging new, unrelated claims. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Nor may he bring multiple, unrelated claims against more than one defendant. *Id*. The amended complaint should include only claims that are related because they concern the same event (or series of related events) or the same defendant.

Any amended complaint must be written or typed so that it is complete in itself without reference to any earlier filed complaint. E.D. Cal. L.R. 220. This is because an amended complaint supersedes any earlier filed complaint, and once an amended complaint is filed, the earlier filed complaint no longer serves any function in the case. *See Forsyth v. Humana*, 114 F.3d 1467, 1474 (9th Cir. 1997) (the 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'") (quoting *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967)).

Finally, the court notes that any amended complaint should be as concise as possible in fulfilling the above requirements. Fed. R. Civ. P. 8(a). Plaintiff should avoid the inclusion of procedural or factual background which has no bearing on his legal claims. The court cautions plaintiff that failure to comply with the Federal Rules of Civil Procedure, this court's Local Rules, or any court order may result in this action being dismissed. *See* Local Rule 110.

Conclusion

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's application to proceed in forma pauperis (ECF No. 2) is GRANTED;

2. Plaintiff's complaint (ECF NO. 1) is DISMISSED with leave to amend within 30 days of services of this order; and

3. Failure to comply with this order may result in dismissal of this action for the reasons stated herein.

Dated: December 31, 2024

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE